UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TENEICA ALLEN,

           Petitioner,            Case Number 08-13198-BC
                                                                    Honorable Thomas L. Ludington

v.

MILLICENT WARREN,

           Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL

      Petitioner Teneica[1] Allen, confined at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] Petitioner was convicted following her jury trial in the Wayne County Circuit Court of first-degree murder. Mich. Comp. Laws 750.316(1)(a). Petitioner was sentenced to life in prison. Petitioner alleges that: (1) she was denied discovery materials prior to trial; (2) the trial court erroneously denied her two motions for a mistrial; and (3) the trial court erroneously failed to instruct the jury on the lesser offense of voluntary manslaughter. For the reasons stated in this Opinion and Order, the petition will be denied.

---

      [1]Spelled "Taneica" or "Tanecia" in some of the pleadings and on the Michigan Department of Corrections website.

      [2]After the petitioner filed her petition she was transferred to the Women's Huron Valley Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Millicent Warren in the caption.

I.

Petitioner was charged in connection with the fatal stabbing of Cleo Tyus. She was tried jointly with her boyfriend, Otha Sandusky, before a jury in the Wayne County Circuit Court.

Tyus's decomposed body was found in his bedroom on August 1, 2005. A forensic entomologist estimated the date of death between July 15 and 19, 2005. Tyus had been stabbed 55 times. Petitioner's fingerprint was found on the inside of the storm door. DNA belonging to Petitioner and Otha Sandusky was found on cigarette butts and bottles in the victim's house. Jewelry and other items were found wrapped in a tablecloth in the trunk of the victim's car which was found near a Greyhound bus station.

At trial, Elizabeth Sandusky, Otha's mother, testified that in July of 2005 she received a call from her son. He stated that he was in Chicago and that he was in trouble. Otha Sandusky told his mother that Tyus had raped Petitioner, and that he needed her to wire him money.

Ann Allard, Otha's aunt and Elizabeth Sandusky's sister, testified that on July 17, 2005, Otha called her and informed her that he was in trouble and needed some money. He told her that he thought he had hurt someone and that he and Petitioner were on the run. Allard spoke with Otha six or seven times that day. During one of these phone conversations Otha told Allard that he had killed someone during a fight after Petitioner had told him that the man had raped her. Allard told Otha to turn himself in to the authorities, but Otha refused.

Allard also spoke with Petitioner on the phone. When she asked Petitioner whether she was involved in the killing, she said, "Yes, somewhat." T 6/27/06 at 193. Allard also asked Petitioner if Otha was holding her against her will, but she replied that he was not. On August 1, 2005, Allard heard about a news broadcast of a body found in Inkster, and she then phoned the police.

-2-

Julia McClain testified that she had an agreement with the prosecutor to testify truthfully at trial in exchange for a reduced charge and an agreed-upon sentence in her own case. McClain testified that she met Petitioner in the Inkster Police lock-up. Petitioner told McClain that she was there for killing a man. Petitioner told her that she and her boyfriend had stabbed the victim with a knife and a pick. Petitioner described how she held the victim down while her boyfriend stabbed him. Petitioner told McClain that she had lied to her boyfriend and told him that the man had raped her. She told McClain that she was renting a room from the man and had a key to his house. They attacked the man in his bed while he was asleep. Petitioner also told McClain that she wanted her boyfriend's aunt killed because she told the police where they were, and she wanted a prosecutor killed who had it in for her.

The defense did not present any witnesses. After closing arguments, jury instructions, and deliberations, both defendants were found guilty of first-degree murder and sentenced to life imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals that raised three claims:

I. Petitioner-Appellant is entitled to a new trial where the trial court abused its discretion in failing to grant the defense request for discovery.

II. Petitioner-Appellant is entitled to a new trial where the trial court abused its discretion in its denial of the mistrial motions.

III. Petitioner-Appellant is entitled to a new trial where the trial court erred in denying a requested jury instruction.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Allen*, No. 273445, 2008 Mich. App. LEXIS 559 (Mich. Ct. App. Mar. 18, 2008). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court denied leave to appeal. *People v. Allen*, 750 N.W.2d 211 (Mich.

2008).

Petitioner has now filed the instant petition, raising the same three claims that she presented to the Michigan courts during her direct appeal.

II.

Federal law provides for the issuance of a writ of habeas corpus for a prisoner in custody pursuant to the judgment of a state court if the prisoner's continued detention violates the Constitution or laws of the United States. 28 U.S.C. § 2254(a). If a particular habeas claim was previously adjudicated in a state court, it should not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

III.

A.

Petitioner's first claim asserts that the trial court erroneously denied her motion for discovery. Respondent asserts that the claim is not cognizable in this action because it is based on an alleged violation of state law.

Prior to trial, Petitioner moved for the production of any taped phone conversation that McClain may have participated in while she was in jail. Petitioner asserted that any such recordings might contain impeachment material that could be used against McClain. The trial court denied the motion:

> In this case there is nothing, there's been nothing shown to this Court, no facts to indicate that these conversations would prove or - strike that. Would assist the defense in any way in impeaching this witness or assisting the defense in any way.
>
> It is in this Court's opinion a fishing expedition. It does differ than regular discovery. This is not a statement or recorded statement made by a witness. It's a conversation that may or may not have even taken place. It's against public policy to allow this in every case where someone is incarcerated. It make no sense.
>
> \*          \*          \*
>
> If you had some basis or some reason to believe someone overheard this person talking and saying the same thing this might be a different situation. It's for those reasons I'm going to sign an order denying the request to examine the phone conversation of the witness.

T 3/14/2006, at 78-80.

The Michigan Court of Appeals agreed with the result reached by the trial court:

> The trial court did not abuse its discretion in denying Allen's request for discovery under Mich. Ct. R. 6.201(A)(2). There was no indication that McClain made statements pertaining to this case in her recorded conversations. Further, Allen did not demonstrate good cause for obtaining discovery beyond that expressly provided by the court rule, because there was no indication that McClain discussed

-5-

> matters pertaining to this case in her phone conversations. The trial court reasonably concluded that Allen was embarking on a fishing expedition.
>
> Also, the trial court did not abuse its discretion by refusing to conduct an in camera review of the records pursuant to Mich. Ct. R. 6.201(C)(2). First, there was no showing that the requested discovery involved privileged information. Second, Mich. Comp. Laws 791.270 does not apply here because that statute applies only to correctional facilities, which by definition do not include a county jail. *See* Mich. Comp. Laws 791.215. Third, even if the recorded telephone calls could be considered privileged, defendant Allen failed to make the requisite showing that there was a reasonable probability that the telephone records were likely to contain material information necessary to the defense. *People v. Stanaway*, 521 N.W.2d 557 (Mich. 1994).

*Allen, supra*, at 13-14.

The state courts' rulings are consistent with federal law. It is well settled that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). A claim involving a violation of state discovery rules alone is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F. 3d 416, 441 (6th Cir. 2002); *see also Friday v. Straub*, 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001). Accordingly, the state court decision to deny Petitioner's claim on the ground that she proffered no reason to suspect that any recording of McClain's telephone calls from jail contained impeachment material did not violate any principle of federal constitutional law.

B.

Next, Petitioner claims that the trial court erred when it denied her motion for a mistrial based on the prosecutor using leading questions during her examination of Allard. She also claims that the trial court should have declared a mistrial during jury deliberations when the jury sent a note that it was having difficulty with a single juror. Respondent asserts that the state court adjudication

of these claims was not unreasonable.

During the direct examination testimony of Allard, the prosecutor asked her whether Petitioner "told you she was there, correct, when the killing happened?" Defense counsel objected and moved for a mistrial on the grounds that there was no basis for the question. He stated that Allard had never made any statement that Petitioner told her that she was at the scene of the murder. Allard's statements to police indicated that Petitioner told her that she was "somewhat" involved, but it did not state that she was physically present. The trial court denied the motion based on the fact that the witness answered the question "no," and therefore Petitioner was not prejudiced. The Court stated, however, that if the prosecutor did not have any other evidence that placed Petitioner at the scene, it would reconsider Petitioner's request for a mistrial. Tr 6/28/06, at 49-53.

The second motion for a mistrial occurred during jury deliberations after one juror sent a note to the court indicating that he wished to have a specific portion of Allard's testimony re-read. None of the other jurors joined in the request, and the Court did not provide the testimony. Later during deliberations, the jury sent a note to the trial court indicating that this same juror "is unable to consider evidence or follow the rules of law," and asked for an alternate juror. T 7/5/06, at 23. Defense counsel requested a mistrial on the grounds that this sequence of evidence showed that the jury was deadlocked. The trial court denied the motion, and instead it read the jury the deadlocked jury instruction. Shortly thereafter the jury returned its verdict.

The Michigan Court of Appeals denied Petitioner's claim that the trial court should have declared a mistrial after each incident on the merits:

> Next, defendant Allen argues that the trial court abused its discretion by denying her requests for a mistrial. We disagree.
>
> A mistrial should be granted only for an irregularity that is prejudicial to the

>rights of the defendant and impairs her ability to get a fair trial. *People v. Bauder*, 712 N.W.2d 506 (Mich. App. 2005). We review a trial court's decision denying a request for a mistrial for an abuse of discretion. *People v. Nash*, 625 N.W.2d 87 (Mich. App. 2000).
>
>The prosecutor's question to Allard was not so prejudicial that it impaired Allen's ability to receive a fair trial. The question–"Now, Taneica told you she was there, correct?"–was not without a factual basis considering that Allard had previously testified that Allen told her that she was "somewhat" involved. Further, Allard testified in response that Allen never told her whether she was present during the offense. Under the circumstances, the trial court did not abuse its discretion in denying Allen's request for a mistrial.
>
>Nor did the trial court abuse its discretion by denying Allen's request for a mistrial during jury deliberations. The jury never indicated that it was deadlocked, but only stated that it was having problems with a single juror. The trial court's decision to give additional jury instructions, including the deadlocked jury instruction, rather than immediately declare a mistrial based on a hung jury, was a reasonable and principled one under the circumstances and, therefore, did not constitute an abuse of discretion. *People v. Babcock*, 666 N.W.2d 231 (Mich. 2003).

*Allen, supra*, at 15-16.

Petitioner first alleges that a mistrial should have been granted because the prosecutor committed misconduct in the manner she questioned Allard. "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine " 'the fairness of the trial, not the culpability of the prosecutor.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (quoting *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent of prosecutorial misconduct: "In every case, we consider the degree to which the remarks

complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused." *Id.* at 964 (quoting *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)).

The prosecutor's questions to Allard did not mislead the jury or unfairly prejudice Petitioner. Petitioner admitted to Allard that she was "somewhat" involved in the killing. This statement fairly allowed for the follow-up question of whether Petitioner had also stated that she was present during the killing. After Petitioner's counsel objected to the question, the jury was excused and Allard explained that she had, in fact, assumed Petitioner meant that she was present because Petitioner had also stated that she was having nightmares about the killing. When the trial court ascertained from the witness that Petitioner had not specifically told her that she was present, the court directed the witness to answer the prosecutor's question "no," when the jury returned. Allard's negative answer to the question dispelled any potential unfair prejudice caused by the prosecutor's question.

The trial court also stated that it would reconsider the mistrial motion if there was no evidence placing Petitioner at the scene. But the prosecutor elicited testimony that Petitioner was the one who had a key to the victim's house, and DNA belonging to Petitioner was found inside the house. Moreover, Petitioner's statements to McClain indicated that she was physically present and assisted her co-defendant by helping to hold the victim down while he stabbed him. The prosecutor's question to Allard was not unfounded and did require the trial court to grant Petitioner's motion for a mistrial.

Next, Petitioner alleges that a mistrial should have been granted because a jury note implicitly indicated that it was hung. It is well established that "[a] judge may encourage jurors who

-9-

are having difficulty reaching a verdict to deliberate longer[.]" *United States v. Straach*, 987 F.2d 232, 242 (5th Cir. 1993) (*citing Allen v. United States*, 164 U.S. 492 (1896)). Such an instruction is improper only if it "unduly coerces the minority into surrendering its views for the purpose of reaching a verdict, or sets a time limit for the deliberations." *Id*. (internal quotation omitted).

Here, the jury never indicated that it was deadlocked; its note simply indicated that it was having a problem with one of the jurors and asked that he be replaced. The trial judge instructed the jury to continue deliberations, using Michigan's standard deadlocked jury instruction. The trial court did not indicate that the jury should reach a particular result, or that any juror should sacrifice his or her own views; in fact, it instructed just the opposite. The Seventh Circuit has explained that "an instruction to continue to deliberate after the jury had declared that it had reached an impasse is perfectly content neutral and carries no plausible potential for coercing the jury to surrender their honest opinions for the mere purpose of returning a verdict." *United States v. Kramer*, 955 F.2d 479, 489 (7th Cir. 1992) (internal quotations omitted); *accord United States v. Frazin*, 780 F.2d 1461, 1470-71 (9th Cir. 1986). The trial court was not required to declare a mistrial upon receiving the note indicating a problem with a single juror, and its decision to give the deadlocked jury instruction instead was not erroneous.

Accordingly, the state court adjudication of Petitioner's second habeas claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law.

C.

Petitioner alleges that the trial court erred when it denied her request for a jury instruction on manslaughter. The Michigan Court of Appeals reviewed this claim and rejected it on the merits:

> Defendant Allen also argues that the trial court abused its discretion by denying her request for an instruction of the lesser offense of voluntary manslaughter. In support of her argument, however, she merely asserts that the evidence showed that co-defendant Sandusky acted in the heat of passion. She fails to explain how a rational view of the evidence showed that her involvement was motivated by passion rather than reason. In any event, as previously explained in section I(A), a rational view of the evidence did not support a manslaughter instruction.
>
> Furthermore, like co-defendant Sandusky, the jury had the option of convicting Allen of the lesser offense of second-degree murder, but rejected that option in favor of a conviction of first-degree murder. Thus, any error in failing to instruct the jury on manslaughter was harmless. *People v. Sullivan*, 586 N.W.2d 578 (Mich. App. 1998).

*Allen, supra*, at 16-17.

The United States Court of Appeals for the Sixth Circuit, sitting en banc, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). The *Bagby* Court held that failure to instruct on lesser-included offenses in a non-capital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure. *Id.*; *accord Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (involuntary manslaughter instruction not required by due process); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (voluntary manslaughter instruction not required).

As the Michigan Court of Appeals reasonably determined, a manslaughter instruction was not warranted because it was not supported by any of the evidence presented at trial. The evidence showed that the victim was attacked in his house while he slept in his bed. He was stabbed over fifty times. The failure to instruct the jury on the lesser offense of manslaughter did not result in a miscarriage of justice nor did it offend the rudimentary demands of fair procedure. Petitioner is

therefore not entitled to habeas relief regarding this claim.

IV.

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner should not be permitted to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

V.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: March 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and on Teneica Allen, #486547, at Robert Scott Correctional Facility, 47500 Five Mile Road, Plymouth, MI 48170 by first class U.S. mail on March 14, 2011.         s/Tracy A. Jacobs
                                              TRACY A. JACOBS